The facts forming this case are shortly these. Thomas Miller died in 1806, having first made his will, by which he appointed Robert Fleming and Robert H. Harwell his executors; both of whom qualified, and whom he directed to sell such part of his estate for the payment of his debts as they might think proper. He also devised to R. Fleming, one of his executors, a tract of land in Warren County, and bequeathed to him his stock in trade, to the amount of $1,500; and to the Complainant, his brother, he bequeathed three negroes. After the death of the testator, Brehon recovered a judgment against Fleming, and M. Johnson, as his security, for about one thousands pounds, and an execution issued, which would have been levied upon Johnson's property; to avoid which, he and the two executors made an agreement, whereby he became the purchaser of the land for the price of one thousand pounds. This sale was ostensibly made for the purpose of paying the debts due from the estate, but was, in reality, the result of a combination between the executors and Johnson, to discharge Brehon's judgment. The consequence of the sale was, to leave the debts unpaid, and to expose the Complainant's legacy, as the only fund out of which the creditors could obtain satisfaction. This has accordingly been sold, to satisfy the judgments against the executors, which the Complainant alleges, *Page 157 
ought to have been paid by the sale of the land. William Miller, guardian of the Complainant, became the purchaser of the negroes in trust for the Complainant, and gave his bond for the payment of the purchase money. Fleming, who was an alien, died soon after the sale, insolvent. The prayer of the bill is, that the bond of William Miller may be delivered up, and the Defendants decreed to pay such sum of money as the Complainant is entitled to. (204)
The Equity relied upon in the bill, consists in this, that the Complainant has lost his legacy, because the price of the land was not applied to the payment of the debts. To support this ground of equity, it ought to be shewn that the land was liable to the payment of the debts, and that a specific legatee is entitled to call upon the devisee of the land, in exoneration of his bequest. If either no power had been given to the executors, to sell such property as they thought fit, for the payment of debts, or they had omitted to exercise the power, the Complainant's legacy would have been first liable, and on that proving deficient, the creditors would have resorted to the land. Had the debts been satisfied out of the Complainant's legacy, he could not stand in the place of the bond creditor, because the devisee of land is as much a specific devisee, as the specific devisee of a chattel. 3 P. Wms., 324. With less reason can such a claim be made where simple contract debts have exhausted the legacy. The principal rule in marshaling assets is, that when a creditor may resort to both the real and personal estate, and a legatee can only resort to the personal, if that be insufficient to pay both, the creditor will be confined to the real estate: or if he has been satisfied out of the personal, if that be Court will permit the legatee to stand in his place and receive satisfaction out of the real estate, to the amount of what has been taken from the personal. 1 P. Wms., 679. But this rule can only operate where the real estate is charged with the payment of debts or legacies, or where the creditor has a lien upon it, except where the donee is heir at law, and then against him, the lands will be liable to the specialty debts, in case of the personal estate. 3 Atk., 272. Amb., 127. In this case, there is nothing stated in the bill whence it can be inferred that the debts were due by specialty, and it must be taken for granted, that they were not so. They have therefore been paid out of the proper and primary fund, and this would be a sufficient reason for refusing relief. But if the debts had (205) been due by specialty, contribution could not have been claimed against the specific devisee of land. I have considered Fleming as the devisee of the land, notwithstanding the statement *Page 158 
in the bill that he was an alien; and I believe the law to be well settled, that an alien may take by devise, although there be some cases and dicta to the contrary. The question occurred before Lord Hardwicke, in Knight v. DuPlessis, 2 Ves., 360. 7 Cranch, 618, who said he did not remember any doubt or distinction, made between a grant, conveyance, or devise to an alien; for an alien might take; the only consideration, therefore, would be, for whose benefit. And this opinion is adopted by the modern writers on devises. Powell 316. 3 Cruise, Title Devise.
As the Complainant, then, would be entitled to no relief in this view of the case, it is to be enquired whether his claims are strengthened by the power given to his executors to sell, and the execution of the power by the sale of the land. The testator has not placed the burthen of the debts upon any particular part of the estate; it is, therefore, left to the operation of law, and it was entirely in the discretion of his executors as to what part should be sold. Had they disposed of the Complainant's legacy for that purpose, he could have no claims against Fleming, as the cases cited prove: and it is difficult to imagine that Harwell and Johnson should be responsible to him, the one for selling, and the other for purchasing land, which was chargeable with no claim, either of his or the creditors. Upon the supposition of the combination charged in the bill, between Johnson and the executors, no one can call them to account for the misapplication of the purchase money, who would not have an interest in the land if it had remained in Fleming's possession till his death. Whether this would be the heir at law of the testator, of Fleming, or the Trustees of the University, claiming by escheat, it is not necessary to determine. The Complainant is announced only in the character of a specific (206) legatee, claiming satisfaction for his legacy. It is certainly not to be approved of, that the land should be sold avowedly to pay the debts of the estate, and afterwards, that the money should be applied to different objects; but if the transaction had been called by its true name, a sale for the benefit of Fleming, upon what ground could it have been assailed? The devise was to him: he was an inhabitant of the State, and a few years longer life and residence, would have entitled him to the rights of citizenship. It is altogether improbable, that the State, or any person claiming under her, would have disturbed him in the enjoyment of the land, had he chosen to keep it.
Long v. Short, 1 P. Wms., 403, has been cited by the complainant's counsel, to show, that the specific devisee of land *Page 159 
should contribute with another specific legatee to the payment of debts. But in that case, both devises were derived from the same subject, which was separated into a fee and lease for years; and a devisee of a term for years being as much a specific devisee, as a devise of lands in fee, to defeat either would equally disappoint the intent of the testator: and the devisees were decreed each to contribute in proportion to the value of the respective premises. But the deficiency was made to fall upon the lands of inheritance, only so far as it arose from the payment of specialty debts; as to the simple contract debts, they were chargeable solely on the leasehold. The case does not prove anything towards establishing the point that the lands were bound to contribute in this case to the Plaintiff's legacy. Upon the whole, it appears to me, that the Defendants have equal equity with the Complainant. The land has been applied to the benefit of him to whom it was devised; and when the testator directed a sale for the payment of his debts, it is not to be presumed that he meant a sale of the lands, neither in point of law, nor according to the usage of the country, which is rather to pay debts with personal property; and the Defendants having the law in their favor, the bill must (207) be dismissed.
Cited: Robards v. Washington, 17 N.C. 176.